IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEPHEN C. YOWELL, *Plaintiff*, <br><br> v. <br><br> RESIDENTIAL MORTGAGE SOLUTION, LLC, *Defendant*. | CIVIL ACTION NO. 3:10-CV-00063 <br><br> MEMORANDUM OPINION <br><br> NORMAN K. MOON <br> UNITED STATES DISTRICT JUDGE |

Plaintiff amended his original complaint seeking enforcement, pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, of an alleged rescission of a refinance mortgage credit transaction. The matter is now before me upon consideration of Defendant's motion to dismiss or, in the alternative, for summary judgment, to which Plaintiff has filed a response in opposition. I have also reviewed the parties' supplemental briefing regarding arguments raised at the hearing on Defendant's motion (arguments first raised in Defendant's motion to dismiss the original complaint). As discussed herein, certain of Plaintiff's allegations fail to state a claim upon which relief can be granted, and my review of the record discloses that Plaintiff's purported notice of rescission, which did not include an offer to tender the loan proceeds, merely advanced a claim of rescission, and did not have the effect of rescinding the loan agreement. Accordingly, I will grant Defendant's motions.

I. ALLEGATIONS

As amended, the complaint alleges that Plaintiff and his wife, Susan Y. Yowell, owned a home in Crozet, Virginia as their principle residence, and that they refinanced the home with Castle Point Mortgage, Inc., on June 7, 2007. Plaintiff asserts that the refinancing was a "credit

transaction" within the meaning of TILA, and Castle Point was a "creditor" within the meaning of TILA.

The credit transaction produced a note in the principal amount of $553,000.00, signed by the Yowells, bearing the date of June 7, 2007, in which the Yowells promised to pay principal and interest in monthly installments. The note was secured by a deed of trust, signed by the Yowells and dated June 7, 2007, which established a lien on the home.

Plaintiff contends that the credit transaction was entered into as a consumer loan, was governed by TILA, and was subject to TILA's rescission provisions. Regarding the credit transaction itself, Plaintiff alleges that TILA required Castle Point to provide each of the Yowells two copies of a notice of right to cancel the transaction to take with them from the closing table, and was required to deliver to each of the Yowells a TILA disclosure statement setting forth the following: the annual percentage rate; the finance charge; the amount financed; the total of payments; and the number, amount, and due dates of payments.

Prior to closing, the Yowells were provided with Exhibit A (submitted as an attachment to the original and amended complaints), styled as "VIRGINIA LOCK IN AGREEMENT - LENDER." In Exhibit A, Castle Point informed the Yowells that they were required to pay a non-refundable $350 appraisal fee as part of their loan application, which the Yowells contend was inconsistent with their being able to rescind the transaction without cost.

At closing, the Yowells were shown copies of notices of right to cancel. These notices, which the Yowells signed, stated that the Yowells had each received two copies of the notices, but the Yowells contend that, in fact, they were not given any copy of the notice of right to cancel to take with them from the closing. Similarly, the Yowells contend that they were shown copies of a TILA disclosure statement, which they signed, but that they were not given copies of

the TILA disclosure statement to take with them from the closing. In Plaintiff's view, because of Castle Point's failure to give either of the Yowells copies of the notice of right to cancel and the TILA disclosure statement to take with them from the closing,

> and because neither of [the Yowells] had the notice of right to cancel or the TILA disclosure statement to inspect after they left the closing and for the next three business days, Castle Point materially violated its disclosure requirements according to TILA with the result that Yowell retained an extended right to cancel for three years from June 7, 2007 or until his ownership interest in the home was transferred.

After the closing, but before May 27, 2010, Residential Mortgage Solution, LLC asserted that it had become assignee of the note. Plaintiff states that Residential Mortgage claims the right to act as holder of the note and this thus "either the creditor or agent for the creditor as to the credit transaction."

According to Plaintiff, "[o]n May 26, 2010, three years had not elapsed from the date of the credit transaction and the Yowells' title to ownership interest in the home had not been transferred to anyone else." On that date, the Yowells, by counsel, mailed a notice of rescission (submitted as Exhibit B to the original and amended complaints) to Residential Mortgage, which stated, in pertinent part:

> I hereby give notice to you as agent for the NOTEHOLDER and Servicer that Stephen C. & Susan S. Yowell rescind their loan. Specifically, this is to notify you that my clients hereby rescind and cancel Loan Transaction #1002849040("Account") closed on May 31, 2007. . . .
>
> This Notice of Rescission is being mailed to you on May 26, 2010, which we contend falls within the extended rescission period under the Truth in Lending Act, 15 U.S.C. § 15  U.S.C. §§ 1601 et seq. ("TILA"), the Home Ownership and Equity Protection Act of 1994, §15 §1639 (" HOEPA"), and Regulation Z §226.23(b)(1)(i-v) and §226.23(3) also part of TILA, and the Federal Trade Commission Act, 15 U.S.C. §41 et seq., which broadly prohibits unfair or deceptive acts or practices in or affecting commerce.
>
> **They contend that not only did you violate the aforesaid laws by failing to make disclosures, but your Truth in Lending Statement (which they never**

-3-

> **received in a timely fashion) understated the lifetime interest under the loan by $829,281.44, among other violations. See attached Forensic Loan Audit.**
>
> On behalf of my clients, I am also requesting copies of all documents related to Account #1002849040 from the date of closing to the present to determine the validity of the debt and any and all ledgers kept by you regarding said Account in written, printed or electronic form. I attach hereto a Qualified Written Request.
>
> With the receipt of this Notice of Rescission and Qualified Written Request, I also demand that you execute and deliver to us and any third parties to which you have communicated a retraction of any Notice of Default. **I further demand that you, as the LENDER for the putative Noteholder, freeze any collection activity, pre-foreclosure or foreclosure actions, and credit reporting to any agency until this matter is resolved.**
>
> We further demand that as required by Regulation Z, 12 C.F.R. §223(b)(2)(d), that you acknowledge with receipt of this Notice of Rescission that your security interest or lien becomes automatically void, by operation of law, upon the expiration of 20 calendar days after receipt of the notice of rescission; that within that time you must take proper steps to reflect the termination of the security interest; and you must return any property or money that has been given to anyone in connection with the above referenced transaction on May 31, 2007: including, but not limited to return any and all monies paid by Stephen C. Yowell and Susan S. Yowell on account #1002849040 at the time of closing and since that date to the present as well as pay any statutory fines and their attorney's fees.

(Elisions added; otherwise verbatim.)

According to Plaintiff, Residential Mortgage received the notice of rescission, "but did not respond within 20 days from receipt of the same to tender in TILA rescission."

Plaintiff asserts that

> Exhibit B was a valid notice of rescission because Castle Point materially violated TILA in two ways: (a) it did not provide the Yowells with the required disclosures under TILA to take away with them from the closing; and (b) Exhibit A undermined the notice of right to cancel that was shown to the Yowells because Exhibit A (given to them prior to the loan closing in a form for them to keep) stated that they were required to pay a non-refundable $350 appraisal fee, contradicting the notice of right to cancel, because Exhibit A contradicted their right in rescission to be free of any fee. Because they were given Exhibit A to keep and were not given the notice of right to cancel to keep, the statement to them that they would have to pay a non-refundable fee was far more prominent than the notice of right to cancel. Even if they had been given the notice of right to cancel to take with them from the closing,

Exhibit A so undermined the notice of right to cancel that, even in such event, Castle Point would have failed clearly to disclose to the Yowells their right to rescind.

Plaintiff states that Residential Mortgage instructed Commonwealth Trustees, LLC to foreclose on the home, and Commonwealth Trustees advertised the home for a foreclosure sale on November 9, 2010, at 11:30 a.m. Prior to the sale, Yowell filed the original complaint in this case and "filed a *lis pendens* as to such complaint in the public land records of the clerk's office of the Circuit Court of Albemarle County, Virginia." Plaintiff asserts that, "[p]rior to 11:30 a.m. on November 9, 2010, Commonwealth Trustees was informed of the filing of the original complaint in this case and the *lis pendens*," and that, "[o]n information and belief, Residential Mortgage" was similarly informed. Nonetheless, the foreclosure sale was conducted as scheduled, and "Residential Mortgage made the high bid. Subsequently, Commonwealth Trustees purported to convey ownership of the home to Residential Mortgage; however, that purported conveyance was void, alternatively voidable."

Plaintiff states that,

> [i]f Residential Mortgage hereafter agreed to TILA rescission, or if this Court rules in favor of TILA rescission, Yowell would be able to tender the amount necessary for TILA rescission of the credit transaction. After deduction of the settlement charges and the payments the Yowells made on the loan, the net amount he needs to tender in TILA rescission will be less than $380,000. Yowell has a commitment for a personal loan for him to make a net tender in TILA rescission. . . . Susan Yowell and Yowell are ready and willing to meet the terms of that loan commitment to make tender in TILA rescission.

Plaintiff adds that "[t]he finance charge for the credit transaction exceeded $2,000," and

> asks the Court to exercise its equitable discretion to alter the timing of tender so that his duty to make tender in TILA rescission would not take place until a reasonable time after agreement by the holder of the note to TILA rescission of the credit transaction or adjudication by this Court of his right pursuant to TILA for rescission of the credit transaction to allow him to access the fund for TILA rescission

-5-

obtained from the personal loan.

In sum, Plaintiff's view is that he "is entitled to a declaratory judgment that, pursuant to TILA, he validly has given notice of rescission of the credit transaction," and he "is entitled to a judgment for $4,000 in statutory damages against Residential Mortgage for its failure timely to respond to the notice of rescission." He also seeks the following: "an order exercising the Court's equitable jurisdiction to alter the timing of tender to allow Yowell a reasonable time to obtain a personal loan or to effect a sale of the home to make tender in TILA rescission"; "a declaratory judgment that the purported foreclosure sale of the home . . . was void" and that the transfer of ownership "to Residential Mortgage was void, alternatively voidable"; and "an Order requiring defendant to pay the reasonable attorneys' fee of Yowell's legal counsel for preparing, filing, maintaining, and prosecuting this action."

## II. STANDARDS OF REVIEW

Regarding a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.

While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, a court may consider a document attached to a motion to dismiss if "it was integral to and

explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity." explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); *see also Davis v. George Mason University*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) ("when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.") (citations omitted); *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint).

Otherwise, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To preclude summary judgment, a factual dispute must not only be material, but also

"'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact." (citing *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Indeed, a trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

#### A.

Defendant asserts that, "[b]y letter dated June 2, 2010, the Defendant's servicing agent

notified the Plaintiff that it was not agreeing to rescind the Plaintiff's loan," and Defendant has submitted a copy of that letter.[1]  Defendant adds the following:

> On June 16, 2010, prior to a foreclosure sale taking place, the Plaintiff filed a case under Chapter 7 of the Bankruptcy Code, case number 10-61786, which was docketed in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division.  The Plaintiff received a Chapter 7 discharge on or about September 8, 2010.  A copy of the bankruptcy case docket is attached. . . .  A foreclosure of the subject property was reset for November 9, 2010.  A notice of the sale was sent to and received by the Plaintiff.  A copy of the sale notice and return receipt card signed by the Plaintiff is attached. . . .  On November 8, 2010, the Plaintiff docketed the instant action.  As the docket in this matter reflects, the Plaintiff did not file a request for a temporary restraining order or preliminary injunction, nor take any other legal action, to stop the foreclosure sale set for November 9, 2010.  On November 9, 2010, the subject property was foreclosed and sold to the Defendant. . . .  [and] a copy of the Trustees Deed is attached. . . .

Regarding Plaintiff's request for a declaratory judgment that he validly gave notice of rescission, Defendant asserts that the May 26, 2010, notice did not have the effect of invalidating the loan contract or security interest, but merely advanced a claim seeking rescission, and made no offer to tender the proceeds of the loan.

**B.**

Essentially, the amended complaint seeks to enforce the alleged notice of rescission, dated May 26, 2010, by requesting a declaratory judgment that Plaintiff gave a valid notice of rescission of the credit transaction.  In *American Mortgage Network v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007), the United States Court of Appeals for the Fourth Circuit adopted the view that unilateral notification of rescission pursuant to TILA does not automatically void the loan

---

[1] The June 2, 2010, letter from Defendant's servicing agent stated, in part, as follows:

> We have reviewed the report completed by Legal Forensic Auditors, but we have no knowledge of from whom they received their documents.  Therefore, we are unable to rely on such report and request that you provide us with the specific alleged violations upon the review of the file we have provided you.  At this time, we will not entertain your request to rescind.

-9-

contract. "Otherwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." *Id*. (citation omitted).

> The natural reading of [TILA, 15 U.S.C. § 1635(b),] is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made, the [borrowers] have only advanced a claim seeking rescission.

*Id*. (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir.2002)). *See also Powers v. Sims & Levin*, 542 F.2d 1216, 1220 (4th Cir. 1976) (rejecting the argument that TILA compels a creditor to remove a mortgage lien in the absence of the debtor's tender of the loan proceeds).

Following the guidance of *American Mortgage*, I find that Plaintiff's purported notice of rescission, which was dated May 26, 2010, and made no offer to tender the proceeds of the loan, did not have the effect of voiding the loan contract or voiding the security interest; rather, it merely advanced a claim seeking a rescission. Defendant did not "acknowledge[] that the right of rescission [was] available," nor had an "appropriate decision maker . . . so determined. . . ."[2] *American Mortgage*, 486 F.3d at 821 (citing *Large*, 292 F.3d at 54-55). As a result, the loan contract and the deed of trust were not invalidated by Plaintiff's purported notice of rescission, and the Defendant was free to enforce the loan and deed of trust by foreclosure.[3,4] Accordingly,

---

[2] Pursuant to 15 U.S.C. § 1635(f), the right of rescission expires three years after the date of the transaction or upon the sale of the property, whichever occurs first. *Jones v. Saxon*, 980 F. Supp. 842, 848 (E.D. Va. 1997), observed that "Congress clearly intended that the consumer must litigate to a conclusion any rescission rights before a sale of the contest property occurs." Here, there is no dispute that the sale of the property took place on November 9, 2010, before any rescission rights were litigated to a conclusion.

[3] I pause to note that Plaintiff's opposition to the motion to dismiss the original complaint suggested that, in *Jacobson v. Bank of America*, Civil Action No. 3:09-cv-00077 (December 13, 2010), I held that a notice of rescission voids a creditor's security interest. In *Jacobsen*, I specifically cited *American Mortgage v. Shelton*, 486

(continued...)

Plaintiff's request for a declaratory judgment must be denied.

I add that, regarding Plaintiff's request for a declaratory judgment that the foreclosure sale was void, "such relief is inappropriate in this case." *Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011).

> "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (internal citation omitted). Such relief "is unavailable in situations where . . . 'claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.'" *Trull v. Smolka*, 2008 U.S. Dist. LEXIS 70233, at *24 (E.D. Va. Sept. 18, 2008) (quoting *Bd. of Supervisors v. Hylton Enters*, 216 Va. 582, 221 S.E.2d 534, 537 (1976)).

*Gallant*, *id*. In a case such as the instant matter, where a foreclosure sale has already occurred, "because the alleged wrong or questionable conduct has already occurred (the foreclosure), . . . declaratory relief is inappropriate." *Id.* (citing *Ramirez-Alvarez v. Aurora Loan Servs., LLC*, 2010 WL 2934473, at *3, U.S. Dist. LEXIS 116995, at *6 (E.D. Va. July 21, 2010)).

---

[3](...continued)
F.3d 815, 821 (4th Cir. 2007), and stated that "[t]he Fourth Circuit has recently clarified that TILA § 1635(b) should not be interpreted literally as requiring the creditor to relinquish its security interest regardless of whether the borrower is able to return the loan proceeds," and I further cited *Large v. Conseco*, 292 F.3d 49, 54-55 (1st Cir. 2002) (holding that the right of rescission does not occur "automatically" upon the borrower's return of a rescission notice).

[4] Regarding the suggestion in the amended complaint that the rescission should be enforced and the foreclosure sale voided because, at the time of the foreclosure sale, Plaintiff had filed the original complaint in this action and a *lis pendens*, there is no authority that holds that a *lis pendens* or the filing of a complaint can act as a stay of a foreclosure sale or as a temporary restraining order. (To recap: the Clerk of the Court entered the instant complaint on the docket on November 8, 2010, and the foreclosure sale was held on November 9, 2010. The record discloses that, even if Plaintiff had been unaware that Defendant had rejected Plaintiff's notice of rescission, Plaintiff received a notice regarding the foreclosure sale.) Under Virginia law, the filing of *lis pendens* pursuant to Va. Code § 8.01-268 serves merely as "notice of the pendency of a suit to any one interested and a warning that he should examine the proceedings to ascertain whether the title to the property was affected or not by such proceedings." *Green Hill Corp. v. Kim*, 842 F.2d 742, 744 (4th Cir. 1988) (citing *Harris v. Lipson*, 167 Va. 365, 189 S.E. 349 (1937)). Additionally, there is nothing in the Federal Rules of Civil Procedure which declares that the filing of a complaint imposes a stay or otherwise acts to restrain a foreclosure sale. Plaintiff could have filed a request for a temporary restraining order or injunction pursuant to Federal Rule 65, and chose not to avail himself of this remedy.

-11-

## C.

Plaintiff contends that the non-refundable appraisal fee, documented in the "VIRGINIA LOCK IN AGREEMENT - LENDER" (the "Agreement," Plaintiff's Exhibit A in support of his complaint and amended complaint), violates TILA because it undermines the right to cancel by contradicting the right to rescind free of any fee. However, the Agreement constitutes a separate transaction that did not involve the extension of credit. The express language of the Agreement states that it is an agreement "to afford the Borrower rate protection for the term of the agreement," and it further states, "[t]his is not a commitment to make a loan or extend credit." As part of the agreement to lock in rate protection, Plaintiff agreed to pay a non-refundable appraisal fee regardless of whether the loan was approved, declined, withdrawn, or closed for incompleteness. The agreement was entered into on May 31, 2007, prior to the loan transaction.

The Fourth Circuit has found that a similar agreement (a deposit agreement providing that, upon denial of the loan application, the lender would refund the deposit, less out of pocket expenses, including an appraisal fee) was a separate transaction, not covered by TILA, because it was entered into before consummation of the credit transaction and did not involve an extension of credit. *Weintraub v. Quicken Loans*, 594 F.3d 270, 276 (4th Cir. 2010). Here, too, the Agreement is a transaction separate from the loan, does not involve the extension of credit, and in no way affected Plaintiff's right to rescind; accordingly, the Agreement is not covered by TILA, and the allegations in the amended complaint involving the non-refundable appraisal fee provided for in the Agreement must be dismissed, as they fail to state a claim upon which relief can be granted.

## D.

Plaintiff's request for statutory damages and attorney's fees likewise fails, given that

Plaintiff's purported notice of rescission did not entitle him to unilaterally rescind the loan transaction, and the property has been sold. Defendant was an assignee of the original lender, and it was not obligated to release its security interest in Plaintiff's property when it was presented with the notice of rescission, which did not include any offer to tender the proceeds of the loan.[5] In *Hudson v. Bank of America*, the Plaintiff requested statutory damages and attorney's fees for Bank of America's refusal to recognize its right of rescission. Citing *Shelton*, the court found that, "under § 1635, an assignee is not obligated to automatically release its security interest in an obligor's property when presented with a mere allegation of a TILA violation and no offer to tender the proceeds of the loan." Civil Action No. 3:09-CV-462, 2010 WL 2365588 at *6 (E.D. Va. 2010). As a result, the court found that Bank of America did not wrongfully refuse to recognize the claim of rescission and thus Hudson was not entitled to either statutory damages or attorney's fees. *Id*.

As in *Hudson*, Defendant in this matter, an assignee of the original lender, was not obligated to release its security interest in Plaintiff's property when presented with the purported notice of rescission of May 26, 2010, which did not include any offer to tender the proceeds of the loan. As previously discussed, Plaintiff merely advanced a claim for rescission, without an offer to tender the loan proceeds; Defendant timely responded to the claim, and Defendant did not wrongfully refuse to recognize the claim of rescission.[6] Accordingly, Plaintiff is not entitled to statutory damages or attorney's fees.

---

[5] Additionally, regarding Plaintiff's allegation that Defendant did not timely respond to Plaintiff's notice of rescission of May 26, 2010, Defendant submits an exhibit indicating that it did, in fact, timely respond within 20 days, on June 2, 2010.

[6] I note that the alleged TILA violation complained of in the purported notice of rescission of May 26, 2010, is not stated as a ground for rescission in this action.

-13-

**E.**

In Defendant's motion to dismiss the original complaint, it argued that Plaintiff's TILA complaint was time-barred. Defendant had raised this argument in its motion to dismiss the original complaint, but not in its motion to dismiss the amended complaint, and Plaintiff addressed the issue in its opposition. At the hearing on the instant matters, I granted the parties time within which to file supplemental briefing on the issue.

The transaction date in this matter was June 7, 2007. Plaintiff filed the instant complaint on November 5, 2010 (although it was not entered on the docket until the following Monday, November 8, 2010). These dates are undisputed. Defendant contends that the TILA complaint is time-barred because it was filed more than three years after the transaction. Plaintiff contends that his claim for rescission is not time-barred because the purported notice of rescission was sent prior to the expiration of three years from the transaction date. Therefore I turn to the question whether the timeliness of Plaintiff's action is measured by his mailing of a notice of rescission or by the filing of this suit, and I find that "it is appropriate to join with the other district courts in this circuit and conclude that the three-year time limit on TILA rescission is absolute, the expiration of which extinguishes the borrower's rescission right regardless of whether any notice of rescission was filed within three years of closing." *Bradford v. HSBC Mortgage Corp.*, ___ F. Supp. 2d ___, ___, 2011 WL 3047490 at *6 (E.D. Va. 2011)[7]; *see also*

---

[7] *See, e.g.,* the discussion in *Bradford* of the following precedents: *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417-18 (1998) (TILA's three-year rescission deadline completely extinguishes the right of rescission, as it is a statute of repose intended by Congress to avoid unnecessarily clouding a bank's title at foreclosure); *Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) (three-year deadline is not subject to tolling based on fraudulent inducement, as it "is a statute of repose, [and] the time period stated therein is typically not tolled for any reason," adding that tolling the rescission deadline beyond the date of the foreclosure sale "would create uncertainty in any chain of title"); and *American Mortgage Network v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (making clear that a borrower's act of sending a rescission notice to his creditor is a necessary, but not a

(continued...)

-14-

Case 3:10-cv-00063-NKM-BWC   Document 24   Filed 08/17/11   Page 14 of 15   Pageid#: 268

*DeCosta v. US Bancorp*, Civil Action No. 10-cv-0301, 2010 WL 3824224 at *5, 2010 US Dist. LEXIS 101873 at *17 (D. Md. Sept. 27, 2010) (the right to rescission is not actually "exercised" until the lender recognizes that rescission is available or a court declares it so; until one of these two events occurs, the right of rescission lies dormant, and that dormant right is finally extinguished once three years pass); *Gilbert v. Deutsche Bank Trust Co. Ams.*, Civil Action No 4:09-cv-181, 2010 WL 2696763 at *4-5, 2010 US Dist. LEXIS 67176 at *14 (E.D. N.C. July 7, 2010) (mailing notice of rescission before expiration of three-year period did not preserve plaintiffs' claim; plaintiffs' three-year period within which to rescind expired prior to filing suit); *In re Salazar*, 2011 Bankr. LEXIS 1159 (Bankr. D. Md. Mar. 29, 2011).

Accordingly, the complaint could be dismissed on the alternative ground that it was not timely filed.

### IV. CONCLUSION

For the reasons discussed herein, Defendant's motions to dismiss (docket nos. 3 & 14) and for summary judgment (docket no. 14) will be granted.

An appropriate order accompanies this memorandum opinion.

Entered this ___17th___ day of August, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[7](...continued)
sufficient, step in exercising one's rescission right; if the creditor does not acknowledge rescission and the borrower fails to pursue his rescission right in court, the mortgage remains fully enforceable just as though the borrower had never sought rescission in the first place).